**Dated: May 7, 2026**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAMERON ISAIAH ADAMS, | ) | Case No. 26-10201-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |

### ORDER ON MOTION FOR REVIEW OF ATTORNEY'S COMPENSATION PURSUANT TO 11 U.S.C. § 329, WITH BRIEF, NOTICE OF OPPORTUNITY FOR HEARING, AND NOTICE OF HEARING [DOC. 9]

The following matters were set for hearing on March 26, 2026:

1. Motion for Review of Attorney's Compensation Pursuant to 11 U.S.C. § 329, with Brief, Notice of Opportunity for Hearing, and Notice of Hearing [Doc. 9] (the "Motion"), filed by the United States Trustee, Ilene J. Lashinsky ("UST"), on February 11, 2026;

2. Response, with Brief, of Counsel for the Debtor to Motion for Review of Attorney's Compensation Pursuant to 11 U.S.C. § 329, with Brief, Notice of Opportunity for Hearing, and Notice of Hearing [Doc. 11] (the "Response"), filed by R. Gavin Fouts, counsel for Cameron Isaiah Adams ("Counsel"), on February 25, 2026; and

3. Reply to Response to Motion for Review of Attorney's Compensation [Doc. 12] (the "Reply"), filed by UST on March 4, 2026.

Jeffrey E. Tate appeared on behalf of UST, and Counsel appeared on his own behalf.

**Introduction**

On June 21, 2024, this Court entered General Order 24-2, titled "Order Regarding Attorney Representation of Chapter 7 Debtors."  General Order 24-2 sets forth the proper parameters of an attorney's representation of chapter 7 debtors in the Western District of Oklahoma and establishes "benchmarks" for such representation to curb errant efforts to evade the holding in Lamie v. United States Trustee, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004),[1] and its progeny treating a chapter 7 debtor's prepetition promise to pay his attorney on a postpetition basis as dischargeable.  In re Milner, 612 B.R. 415, 431-32 (Bankr. W.D. Okla. 2019), *aff'd on stated grounds, vacated as to court's reduction in* fees 664 B.R. 306 (W.D. Okla. 2024).  General Order 24-2 establishes limitations on, among other things, unbundled legal services, bifurcated fee contracts, and attorney disclosures to the court and the client.  The Court sat *en banc* in considering and issuing General Order 24-2 to ensure unanimity in identifying prohibited practices and the underlying concerns of the Court.  The Court issued the order only after extended litigation and years of deliberation.

Unfortunately, the tension giving rise to General Order 24-2 between debtors' desires to be represented by counsel in a chapter 7 case and attorneys' desires to be paid for their representation created by Lamie remains.  In fact, it has culminated in new efforts by debtors' attorneys to create a procedure for postpetition payment of a chapter 7 debtor's counsel's attorney fees not paid in full prior to the petition date.  Like the attorney addressed specifically in General Order 24-2, Counsel here seeks to avoid the restrictions of Lamie and the discharge of his fees in this case involving a debtor unable to pay his fees in full prior to the filing date.  His

---

[1] Lamie holds postpetition attorney fees of an attorney representing a chapter 7 debtor cannot be paid with bankruptcy estate assets.  Lamie, 540 U.S. at 538.

scheme to provide for postpetition payment of attorney fees agreed upon prepetition does not satisfy controlling law or General Order 24-2 and warrants a word to the wise:  before embarking on a new manner of avoiding the limitations of <u>Lamie</u> and General Order 24-2 on attorney compensation, all debtors' counsel would be well advised to first seek guidance from the UST as to its view on the proposed payment method.

## **Findings of Fact**

The underlying facts of this case are neither complex nor lengthy.

1. On August 13, 2025, debtor, Cameron Isaiah Adams ("Debtor"), and Counsel entered into an Attorney-Client Contract (the "Contract") providing Debtor agrees to pay to Counsel a $1,617 flat attorney fee, together with $338 in filing fees, and $45 for a credit report for a total payment of $2,000 (the "Flat Fee"), for specific services outlined in paragraph 3 of the Contract.  UST Ex. 5.

2. Paragraph 3 of the Contract sets forth the scope of the legal services to be provided by Counsel, stating "all legal services necessary to a standard Chapter 7 . . . bankruptcy case" including (the "Flat Fee Services"):

   - Consultation to evaluate the financial situation and discuss potential bankruptcy options.

   - Preparation and filing of bankruptcy petition and schedules.

   - Representation at the meeting of creditors, confirmation hearings and any necessary court appearances.

   - Preparation and filing of reaffirmation agreements.

   - Responding to inquiries from creditors.

   - Assisting with discharge and any post-filing requirements.

   UST Ex. 5 ¶ 3.

3. The Contract further outlines additional legal services related to Debtor's bankruptcy case including:  (i) amendments to the petition or schedules, (ii) motions to convert or dismiss, (iii) motions to avoid judicial liens, (iv) motions to redeem, (iv) representation at a Rule 2004 examination, and (v) response to an administrative audit (collectively, the "Additional Services").  UST Ex. 5, ¶ 4.  Under the Contract, fees and expenses for the Additional Services will be billed separately at Counsel's customary hourly rate of $250. UST Ex. 5, ¶ 4.

4. The Contract specifically states representation in adversary proceedings or complex litigation, appeals or post-judgment proceedings, and non-bankruptcy matters are not included within the scope of Counsel's representation of Debtor (the "Excluded Services").  UST Ex. 5, ¶ 5.

5. The Contract provides, once the Flat Fee is paid, it is non-refundable.  UST Ex. 5, ¶ 6.

6. The Contract also provides a mechanism for Debtor to pay the unpaid portion of the Flat Fee to Counsel postpetition:

> In certain limited circumstances, the Attorney may be permitted by a bankruptcy court to file the Client's case prior to receiving the amount specified in Section 2 in full.  In such an event, Client Agrees that the Attorney has expressly advised the Client that any fees due and outstanding as of the filing of the Client's bankruptcy case ("Dischargeable Outstanding Fees") will be dischargeable in the bankruptcy case and that the Attorney will not take any action to collect any Dischargeable Outstanding Fees. *Client understands that he or she is not legally obligated to to [sic] repay any Dischargeable Outstanding Fees.*  Regardless of Client's decision to repay the Dischargeable Outstanding Fees, Attorney will provide all standard services required in Client's bankruptcy case.

> Nonetheless, Client agrees that Client may voluntarily repay any Dischargeable Outstanding Fees pursuant to 11 U.S.C. § 524(f).  Client authorizes Attorney to send the Client a voluntary repayment agreement which sets forth the terms of a voluntary repayment of Dischargeable Outstanding Fees; send the client a Bank Draft Authorization Agreement and automatically debit the Client's bank account pursuant to the terms of the Bank Draft Authorization Agreement; call, text or otherwise communicate with the Client regarding the Client's voluntary

repayment of the Dischargeable Outstanding Fees; and receive funds in payment of the Dischargeable Outstanding Fees.

UST Ex. 5, ¶ 7 (emphasis added).

7.    Debtor filed a voluntary chapter 7 bankruptcy petition on January 27, 2026.  UST Ex. 6.

8.    As of the Petition Date, Debtor had paid Counsel $1,080 of the Flat Fee, leaving an unpaid balance of $920 owing to Counsel. UST Ex. 6, p. 66 (Disclosure of Compensation of Attorney for Debtor ("Attorney Disclosure")).

9.    The Attorney Disclosure, filed on the Petition Date, states:

If the Debtor(s) has paid Pioneer Legal PLLC [Counsel's law firm] less than the full amount owed as of the petition date, Debtor(s) *has agreed* to enter into a voluntary repayment plan for the amounts owed as of the petition date (the "Dischargeable Outstanding Fees").  The Debtor(s) *has agreed* to voluntarily pay the Dischargeable Outstanding Fees schedule to be paid by cash, check or debt card.  The Debtor(s) acknowledges that all post-petition payments are strictly voluntary.

UST Ex. 6, p. 67 ¶ d (emphasis added).

10.    The Attorney Disclosure also provides Pioneer Legal PLLC may charge, as needed: $250 for motions to avoid judgment liens and amendments to Schedules D and E/F. UST Ex. 6, p. 67 ¶ d.

11.    On the Petition Date, Debtor filed his Schedules.  Notwithstanding $920 still being due and owing to Counsel under the Contract, Counsel is not scheduled on Schedule E/F as an unsecured creditor in the amount of $920.  UST Ex. 6,  pp. 25-38.  And, Counsel never filed a proof of claim for an unsecured claim in the amount of $920.

12.    By all accounts, Debtor was suffering considerable financial strain when his bankruptcy case was filed:  his debts were twice the size of his assets, his income exceeded his monthly expenses by only $225.32, and he was a defendant in two small claims actions UST Ex. 6, pp. 46, 48, 54 and 55.

5

13.     Debtor is an "assisted person," and Mr. Fouts is a "debt relief agency" and provided "bankruptcy assistance" within Section 101(3), 12(a), and (4A), respectively.  Motion, p. 3, ¶¶ 17 and 18; Response, p. 2, ¶¶ 18 and 19.

14.     Debtor did not return an executed voluntary repayment agreement to Counsel postpetition and did not pay any portion of the $920 to Counsel postpetition.

15.     Counsel did not send the voluntary repayment agreement to Debtor postpetition and did not solicit payment of the $920 from Debtor postpetition.

### **Conclusions of Law[2]**

Every bankruptcy court has the "core and traditional" duty to oversee and review attorneys representing bankruptcy debtors, especially their fee arrangements, as "the potential for abuse is high." Vara v. Shepherd (In re Smith-Freeman), 674 B.R. 1, 31 (Bankr. W.D. Pa. 2024) (citing UST v. Cialella (In re Cialella), 643 B.R. 789, (Bankr. W.D. Penn. 2022)).  "[P]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." Sisson v. United States Trustee (In re Milner), 664 B.R. 306, 314 (W.D. Okla. 2024) (citing In re Hackney, 347 B.R. 432, 442 (Bankr. M.D. Fla. 2006) (quoting H.R. Rep. No. 95-595, at 329 (1977) as reprinted in 1978 U.S.C.C.A.N. 5787, 6285)).  Abuse arises where lawyers overcharge for their services and/or where creditors are denied their proper share of bankruptcy estate proceeds by payments made in preference of the bankruptcy attorney to the detriment of other unsecured creditors. SE Property Holdings, LLC v. Stewart  (In re

---

[2] Parties are directed to General Order 24-2 for a more in-depth review of controlling statutory authorities and case law.

Stewart), 970 F.3d 1255, 1259 (10th Cir. 2020) (citing Bethea v. Robert J. Adams & Assocs., 352 F.3d 1125, 1127 (7th Cir. 2003)).

General Order 24-2 is a bellwether dissertation of how attorneys practicing in the Western District of Oklahoma must structure their engagement agreements with potential chapter 7 debtors and satisfy their disclosure obligations to their debtor clients and the Court. It methodically identifies and interprets the applicable law governing the attorney-debtor relationship in a chapter 7 case, setting forth the appropriate methods of complying with those requirements and making correct disclosures. Thus, the Court does not write on a blank slate and will not rehash what is plainly laid out in General Order 24-2. Rather, the Court simply applies General Order 24-2 to the facts before it and clarifies its position on Counsel's prepetition/postpetition payment mechanism designed to avoid the prohibition on using bifurcated contracts.

I.   **ALTHOUGH PURPORTING TO BE A UNITARY PREPETITION CONTRACT WITH A VOLUNTARY POSTPETITION CONTRACT, THE CONTRACT IS FRAUGHT WITH THE SAME ISSUES RAISED BY PROHIBITED BIFURCATED CONTRACTS.**

A contract is considered bifurcated when an attorney provides some services to a chapter 7 debtor client prepetition under a prepetition contract, and the remainder of the necessary bankruptcy services are paid under a second postpetition contract. General Order 24-2, p. 7. General Order 24-2 unequivocally determines bifurcated attorney contracts are not permissible in chapter 7 cases filed in the Western District. General Order 24-2, p. 8.

While the Contract is, in fact, the only contract between Debtor and Counsel,[3] the Contract anticipates a second, postpetition contract. Specifically, it provides (i) Debtor "agrees

---

[3] 11 U.S.C. § 528(a)(2) required Counsel to provide a copy of the fully executed Contract to Debtor no later than 5 business days after Counsel first provided bankruptcy assistance services

to pay" $2,000 for services outlined in paragraph 2 of the Contract and (ii) if Counsel is "permitted by a bankruptcy court to file [Debtor's] case prior to receiving" $2,000 in full, Debtor "authorizes [Counsel] to send [Debtor] a voluntary repayment agreement."[4]  UST Ex. 5, p. 2 ¶ 7.  The Contract states any of the $2,000 not paid prepetition is dischargeable in Debtor's bankruptcy case, and Counsel will take no further action to collect the unpaid balance.  UST Ex. 5, p. 2 ¶ 7.  Nevertheless, the Contract provides Debtor can voluntarily pay the unpaid fees and authorizes Counsel to (i) send him a voluntary payment agreement and a bank draft authorization agreement to allow Counsel to automatically debit Debtor's bank account and (ii) call, text or communicate with Debtor regarding the voluntary payment.  UST Ex. 5, p. 2 ¶ 7.  These terms create, in essence, the second contract in the prohibited bifurcated contract scheme as Debtor has agreed, on a prepetition basis, to "voluntarily" pay on a postpetition basis.  While Counsel testified he did not send the voluntary payment agreement to Debtor, and Debtor paid no further fees to him postpetition, the fact remains Counsel obtained Debtor's agreement, albeit prepetition, to voluntarily pay the unpaid $920 of the Flat Fee.  So while a prepetition contract

---

to Debtor.  Every version of the Contract provided to the Court contains only Debtor's signature, not that of Counsel or his firm.  UST Ex. 5; Response, Ex. A.  The fact the copy of the Contract attached to the Response filed by Debtor is not signed by Counsel suggests the Contract was never executed by Counsel and, consequently, Debtor was not provided with a copy of a fully executed Contract as required by Section 528(a)(2).  While 11 U.S.C. § 526(c)(1) suggests the Contract is void as a matter of law, because the record contains no direct evidence from Debtor that his copy of the Contract is not signed as well, the Court will not find the Contract to be void on this ground alone.  Counsel is, however, cautioned to ensure full compliance with Section 528 in all respects in the future.

[4] The phrase, "if permitted by a bankruptcy court to file [Debtor's] case prior to receiving $2,000 in full," is seriously misleading.  Counsel never sought court authorization to file the case prior to payment in full of his Flat Fee or to permit any purported voluntary payment of any portion of the Flat Fee on a postpetition basis.  And, the Contract and its terms were never authorized or otherwise endorsed by the Court.  This in and of itself warrants voiding the Contract under Section 526(a)(2) and (c)(1).

and a postpetition contract were not executed as with bifurcated contracts, the effect is the same – an intent to impose, whether legally or morally, a postpetition obligation to pay Counsel the Flat Fee agreed to prepetition.[5]

The Contract and its payment scheme is replete with troubling issues.  First, Counsel obtained Debtor's consent before his knowledge of Debtor's financial affairs had been established and he could determine if it would be in Debtor's best interest to undertake the voluntary payment postpetition.  Based on the Statement of Financial Affairs, Debtor struggled to pay the $1,080 prepetition given the length of time and number and amount of payments required to pay such amount to Counsel prepetition.  The "incongruity" created by the Contract is it creates a "mechanism to get the debtor to pay attorney fees 'they could not pay quite literally the moment before the petition is filed'" thereby threatening Debtor's ability achieve the proverbial fresh start.  General Order 24-2, p. 8 (citing In re Baldwin, 640 B.R. 104, 114 (Bankr. W.D. Ky. 2022)).

Second, if Counsel had sent the voluntary repayment agreement and bank draft authorization as the Contract provides, Counsel could have drafted Debtor's bank account and caused an overdraft position resulting in bank fees.  How this set of circumstances could ever be in the Debtor's best interest is unimaginable.  If the Contract is implemented as drafted, the

---

[5] The degree of Debtor's agreement to voluntarily pay the Unpaid Fee can easily be misconstrued based on the plain language of the Contract.  However, Counsel's actions belie his claim to be the holder of a prepetition dischargeable unsecured claim for the Unpaid Fees.  Counsel did not schedule himself or his firm as an unsecured creditor in Schedule E/F, and he did not file a proof of claim for the Unpaid Fees.  Moreover, if truly a voluntary agreement to pay the otherwise dischargeable Unpaid Fees, then why does the Contract even discuss Debtor's agreement to voluntarily pay the Unpaid Fees, provide for a postpetition agreement to pay the Unpaid Fees and authorize Counsel to send a bank authorization to Debtor postpetition for auto drafts of his bank account to pay the Unpaid Fees postpetition?  The more appropriate course would be to enter into a reaffirmation agreement which is, of course, subject to Court review and, more likely than not, would be disapproved.

postpetition payment would take place outside of the Court's purview and oversight,[6] a result that is simply unacceptable.

Third, any steps taken by Counsel postpetition to collect the Unpaid Fee, whether it be sending the voluntary payment agreement to pay and bank draft authorization as provided in the Contract or making calls, texting, or otherwise communicating with Debtor regarding payment of the Unpaid Fee is a classic violation of the automatic stay under Section 362 as Counsel has not sought relief from the stay.  Moreover, the Contract implicitly suggests Debtor prefer the payment of the Unpaid Fee, which is simply a prepetition unsecured claim, to the exclusion of Debtor's other prepetition creditors.

Finally, Counsel estimated he performed approximately 3 ½ hours of work prepetition on Debtor's behalf, which at $250/hour, equals $875 in prepetition fees incurred.  Yet after deducting the filing fee and the credit report cost, Counsel only received $697 to cover the prepetition fees.  Notwithstanding Counsel's arguments to the contrary, contracting for payment postpetition, whether voluntary or by contract, of the earned but unpaid prepetition fees is the classic bifurcated contract model not permissible in this district under General Order 24-2.

 In sum, the Court concludes the Contract violates the letter and spirit of General Order 24-2.

## II.    COUNSEL DOES NOT COMPLY WITH GENERAL ORDER 24-2 FOR REQUIRED SERVICES IN REPRESENTATION OF DEBTOR.

General Order 24-2 sets forth certain mandatory services an attorney representing a potential chapter 7 debtor must perform in the Western District of Oklahoma.  General Order

---

[6] While Counsel would have the obligation to amend his Rule 2016 Statement to disclose any postpetition payments received, nothing would require his disclosure of placing his client in an overdraft position, something this Court finds highly troubling.

24-2 prohibits debtors' counsel from "unbundling" their legal services and requires counsel to provide certain mandatory "core" services.  Those mandatory services under General Order 24-2, *but excluded from the scope of services to be provided by Counsel under the Contract*, are: (i) advice and assistance with any requests for turnover of documentation or information and any audit requests from the chapter 7 trustee or the UST ("Turnover/Audit Requests"); and (ii) advice and assistance regarding any motions to avoid judicial liens ("Judicial Lien Avoidance Motions"), motions for relief from the automatic stay and/or abandonment ("Stay/Abandonment Motions"), and exemption planning and objections ("Exemptions").  General Order 24-2, p. 5, ¶¶ 3 and 4.

Judicial Lien Avoidance Motions are not excluded from the Contract entirely but are relegated to "Additional Services" for which Debtor must pay an additional $250/hour to Counsel above the Flat Fee.  Judicial Lien Avoidance actions are often critical to chapter 7 debtors which is why provision of such services is mandatory in this district under General Order 24-2.  Inclusion of such services as an "Additional Service" is simply unbundling those mandatory services from Counsel's core representation of Debtor in violation of General Order 24-2.

Similarly, Turnover and Audit Requests, Stay/Abandonment Motions, and Exemptions are not included within the scope of services to be provided under the Contract or as "Additional Services" for which an additional $250/hour will be charged.  UST Ex. 5, p. 1, ¶¶ 3 and 4.  However, they also do not fall within the express parameters of "Excluded Services" under the Contract.  UST Ex. 5, p. 1, ¶ 5.  These mandatory core services are simply not addressed by the Contract, which creates an ambiguity as to whether Counsel will or will not provide those services.  Many chapter 7 consumer debtors lack the legal sophistication to conclude "including"

is not exclusive but only illustrative of the required services in this district and, therefore, includes Turnover and Audit Requests, Stay/Abandonment Motions, and Exemptions within the Flat Fee Services. The Contract unnecessarily creates an otherwise easily avoided ambiguity by failing to specifically include all mandatory core services expressly within the scope of the Required Services under the Contract.

Here, the Contract is deficient under General Order 24-2 as it improperly unbundles Counsel's legal services. First, the Contract incorrectly categorizes Judicial Lien Avoidance Motions as "Additional Services" for which Counsel can charge an additional $250/hour rather than including such services as "Flat Fee Services." Second, the Contract is ambiguous at best, and borders on misleading, for failing to even address the provision of legal services for Turnover/Audit Requests, Stay/Abandonment Motions, and Exemptions as falling within the Flat Fee Services, the Additional Services, or the Excluded Services.[7]

In sum, the Contract improperly unbundles Counsel's legal services in violation of General Order 24-2.

III.     **THE CONTRACT VIOLATES SECTIONS 526, 527, AND 528 AND IS VOID.**

Sections 526, 527, and 528 (applicable to Counsel as Debtor is an "assisted person" and Counsel is a "debt relief agency"), combined with General Order 24-2, require Counsel's Contract with Debtor be *clear and concise*. Section 526 requires counsel for consumer debtors:

- To provide a copy of the fully executed engagement agreement to the debtor;

---

[7] The Court rejects any suggestion the list of services to be provided by Counsel under the Contract is merely illustrative and not exclusive. Counsel's suggestion otherwise is tantamount to an admission he drafted an agreement easily misunderstood by the undersigned, who has a law degree, has practiced bankruptcy law or been on the bankruptcy bench for 37 years, and holds an understanding of legal contracts and bankruptcy far exceeding the typical chapter 7 consumer debtor.

- To perform all promised services (Section 526(a)(1));

- To not make any untrue or misleading statements in documents filed in a case (Section 526(a)(2));

- To not misrepresent, "directly or indirectly, affirmative or by material omission" the services to be provided (Section 526(a)(3)).

Schultz v. Layng (In re Suazo), 655 F. Supp. 3d 1094, 1100 (D. Colo. 2023) (citing 11 U.S.C. § 526). An attorney who acts intentionally or negligently in failing to comply with Sections 526, 527, and 528 is liable for fees already received from the debtor, actual damages, and reasonable attorneys' fees. Milner, 612 B.R. at 441 (citing 11 U.S.C. § 526(c)(1 and 2)); Suazo, 655 F.Supp.3d at 1100. Similarly, General Order 24-2 requires attorneys to provide clear and conspicuous disclosures explaining the services to be provided, the fees or charge for such services, and the terms of payment. General Order 24-2, p. 13 (citing Benjamin R. Matthews & Assoc. v. Fitzgerald (In re Rosenschein), 651 B.R. 677, 686 (D.S.C. 2023)). General Order 24-2 goes even further and specifically identifies what the Contract must contain.[8]

The Contract is problematic under Sections 526 and 528 (and consequently General Order 24-2). Specifically, the only version of the Contract in the record is signed solely by Debtor and not Counsel. This omission seemingly violates Section 528(a)(2) and General Order 24-2 which require Counsel to provide Debtor with a copy of the fully executed and completed contract. Additionally, the Contract does not address the timing and specific acceptable manners

---

[8] Specifically, General Order 24-2 requires the attorney client contract: (i) be in writing, contain simple language, and be free from legalese; (ii) clearly identify the debtor(s) and the attorney; (iii) clearly identify the legal fees to be paid to the attorney, by whom, and when; (iv) identify any filing fees and expenses to be paid by the debtor(s); (v) be signed by both the debtor(s) and the attorney; and (vi) if the agreement is in a fillable format, be completed in full and consistently throughout, with provisions not applicable to the subject representation marked through. General Order 24-2, p. 13.

of payment of the Flat Fee and the Unpaid Fee (other than to state credit card payment is not allowed in a specific circumstance.[9]) UST Ex. 5. The Contract also fails to address the timing and method of payment of fees associated with any "Additional Services" charged at $250/hour. UST Ex. 5.

Section 528(a)(1)(A) requires the Contract with Debtor to "clearly and conspicuously" explain the services to be provided to Debtor.[10] However, as detailed in Parts II and IV herein, the Contract is ambiguous at best and conflicts with Counsel's disclosures to the Court and, therefore, cannot be considered to be a clear and conspicuous explanation of the services to be provided by Counsel. Finally, the Contract specifically advises Debtor any unpaid portion of the Flat Fee as of the Petition Date is dischargeable, and Counsel "will not take any action to collect" the Unpaid Fee. UST Ex. 5, p. 2 ¶ 7. Notwithstanding the representation, the very next paragraph of the Contract provides Counsel can (i) send Debtor a voluntary repayment agreement postpetition providing the terms of voluntary payment of the Unpaid Fee *and* a bank draft authorization form to automatically debit Debtor's bank account under the terms of such contract, and (ii) call, text, or otherwise communicate with Debtor regarding the voluntary payment of the Unpaid Fee postpetition. UST Ex. 5, p. 2 ¶ 7. Such actions, if implemented, cannot be considered as not taking any action to collect the Unpaid Fee.

The Court must keep in mind the primary goal of Section 528(a) is clear disclosure of the substantive terms of the retention agreement between Debtor and Counsel. Milner, 664 B.R.

---

[9] Consistent with the Contract failing to contain payment terms, based on the Form 2030, Debtor paid Counsel over time but in inconsistent increments and amounts. UST Ex. 6, p. 57 (SOFA), ¶ 7.

[10] General Order 24-2 also requires the services to be provided to be "clearly and conspicuously" explained. General Order 24-2, p. 13.

14

at 317.  As a whole, the Contract fails to satisfy Section 528(a)(1) by (i) misrepresenting and/or creating ambiguities regarding the services required to be provided by Counsel under General Order 24-2 and (ii) failing to set forth the actual terms of payment of Counsel's fees including Debtor's responsibility for the Unpaid Fees on a postpetition basis and the permissible actions Counsel may take to collect them postpetition.  Attorneys who fail to comply with Section 528(a)(1) can find their agreements voided and disgorgement of fees ordered.  Smith-Freeman, 674 B.R. at 20.

No evidence before the Court suggests Counsel acted with bad intent in seeking to avoid the requirements of Sections 526 and 528 (and General Order 24-2) although his actions were ill advised.  Counsel elected to ignore the express requirements of Section 526 and 528 in drafting the Contract and set himself up for failure.  Similarly, Counsel voluntarily chose to draft and use an attorney retention contract which fails to satisfy the straightforward requirements of General Order 24-2 in implementing Sections 526, 527, and 528.  Had the Court not taken the effort to draft General Order 24-2, Counsel's actions could, perhaps, be written off to inexperience or confusion with application of Sections 526 and 528.  However, General Order 24-2, which is incorporated into the Local Rules and is readily available on the Court's website, clearly sets forth what is required.

Simply stated, Counsel knowingly elected to ignore explicit directions in Sections 526 and 528 and General Order 24-2 and, consequently, must suffer the consequences under Section 526(c)(1) – the Contract is void, and Counsel must disgorge the $697 in fees previously paid by Debtor and received by Counsel.

15

**IV.    THE ATTORNEY DISCLOSURE IS NOT CLEAR AND CONCISE AND IS INCONSISTENT WITH THE CONTRACT IN VIOLATION OF GENERAL ORDER 24-2.**

General Order 24-2 specifically states:

A debtor's attorney's obligations set forth in Section 329 and Rule 2016(b) must be carefully reviewed and thoughtfully satisfied as "[t]he attorney's duty of disclosure is that of a fiduciary." SE Property Holdings, LLC v. Stewart (In re Stewart), 970 F.3d 1255, 1263 (10th Cir. 2020) (first citing Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 480 (6th Cir. 1996); and then citing Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463, 470 (2d Cir. 1981)).  Debtors' counsel must disclose in their Rule 2016(b) statement the nature of the full terms of their fee arrangement with the debtor; putting details regarding compensation in other filings but not the Rule 2016 statement is insufficient.  Jensen v. United States Trustee (In re Smitty's Truck Stop), 210 B.R. 844, 849 (10th Cir. BAP 1997) (citing Arens v. Boughton (In re Prudhomme), 43 F.3d 1000, 1003 (5th Cir. 1995) (disgorgement ordered where applicant failed to disclose retainer in 2016 disclosure statement even though retainer was disclosed in SOFA)).

General Order 24-2, pp. 9-10.

Here, Counsel's Attorney Disclosure is undeniably inconsistent with the Contract, making his disclosures misleading.

Notable inconsistencies include:

1.  The Contract labels amendments to the petition and schedules, motions to dismiss or convert, motions to avoid judicial liens, and motions to redeem, among others, as Additional Services to be billed at $250/hour rather than included in the Flat Fee.  In contrast, the Attorney Disclosure provides "exemption planning; preparation and filing of reaffirmation agreements; preparation and filing of motions to enlarge time to file reaffirmation agreements, certifications about financial management course and other similar motions" as Additional Services to be provided but is silent as to the compensation required therefor if not included within the scope of the services covered by the Flat Fee.  In a later paragraph, the Attorney Disclosure provides

16

Counsel may charge $250 for motions to avoid judgment liens, to amend Schedules D and E/F, or to reopen a case to file a financial management course certification plus a $260 filing fee.

2. The Contract is silent as to exemptions and exemption planning; however, the Attorney Disclosure includes exemption planning as an Additional Service but is silent as to the compensation terms therefor.

3. The Contract identifies representation in adversary proceedings and complex litigation, appeals and post-judgment proceedings, and services related to non-bankruptcy legal matters as Excluded Services thereunder not included in the Flat Fee services.  Nevertheless, the Attorney Disclosure limits the services excluded from the Flat Fee as representation in any dischargeability adversary proceedings (a very limited subset of all adversary proceedings), 2004 exams, and any other contested matter/proceeding.  This definition of excluded services not only conflicts with the Excluded Services under the Contract but also conflicts with the Flat Fee Services and the Additional Services to the extent any of the matters identified as Flat Fee Services or Additional Services become "contested matters" under Rule 9013, Fed. R. Bankr. P.

Rule 2016(b) requires Counsel's disclosures under Rule 2016(b) "must be precise and complete." Smith-Freeman, 674 B.R. at 32 (citing 9 Collier on Bankruptcy ¶ 2016.20 (16th 2023)).  General Order 24-2 requires attorney disclosures to the Court be "accurate and non-evasive."  General Order 24-2, p. 9.  The Attorney Disclosure is neither precise nor complete and, quite frankly, is confusing.  It should go without saying, the Attorney Disclosure should match the Contract terms and certainly not conflict with them.

17

As the Attorney Disclosure is confusing, inconsistent, and incomplete, Counsel has not satisfied his obligations under Section 329 and Rule 2016(b). Counsel, as Debtor's attorney, was and is required to carefully and thoughtfully satisfy the requirements in Section 329 and Rule 2016(b). General Order 24-2, pp. 9-10 (citing Stewart, 970 F.3d at 1263 (first citing Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 480 (6th Cir. 1996); and then citing Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463, 470 (2d Cir. 1981))). Counsel was required to disclose in the Attorney Disclosure the full terms of his fee arrangement with Debtor. General Order 24-2, p. 10 (citing Jensen v. United States Trustee (In re Smitty's Truck Stop), 210 B.R. 844, 849 (10th Cir. BAP 1997) (citing Arens v. Boughton (In re Prudhomme), 43 F.3d 1000, 1003 (5th Cir. 1995) (disgorgement ordered where applicant failed to disclose retainer in 2016 disclosure statement even though retainer was disclosed in SOFA))). Here, the Attorney Disclosure is inconsistent with the actual Contract and was not carefully and thoughtfully crafted to accurately identify the services agreed to be provided and the terms of payment therefor.[11]

General Order 24-2 recognizes the consequences of an attorney's failure to fully and accurately disclose compensation arrangements as "harsh." General Order 24-2, p. 11. As with the failure to fully comply with Sections 526 and 528, the default remedy is to void the Contract and order disgorgement of all fees paid. General Order 24-2, p. 11 (citing Cialella, 643 B.R. at 819 (citing Stewart, 970 F.3d at 1267)). The Court concludes such remedy is warranted.

—————————

[11] Neither the Contract nor the Attorney Disclosure disclose the obvious conflict of interest arising from Counsel holding an unsecured claim against Debtor as of the Petition Date in the amount of the Unpaid Fees and his less than subtle suggestion to pay the Unpaid Fees to Counsel postpetition while not recommending the same course of conduct for all of Debtor's prepetition creditors.

18

As previously stated, Counsel should have sought the advice of the UST in crafting any agreement providing for less than full payment of his attorney fees prior to the Petition Date. He, likewise, should have complied with the requirements set forth in Sections 329, 526, and 528, Rule 2016, and General Order 24-2. Counsel chose to do neither and now faces the harsh consequences.

## CONCLUSION

For the reasons set forth above, the Contract is VOID, and Counsel is directed to remit to Debtor $697 and to transmit such payment to Debtor with a letter enclosing a copy of this Order. Additionally, the UST must be copied on the letter to Debtor.

IT IS SO ORDERED.

# # #